UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X
J.Z., et al.,                                          17 Civ. 7612

                              Plaintiffs,              OPINION

        -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
et al.,

                              Defendants.
----------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/5/17

A P P E A R A N C E S:


        Attorney for Plaintiffs

        THE LAW OFFICE OF ELISA HYMAN, P.C.
        42 West 24th Street, 2nd Floor
        New York, NY 10010
        By: Elisa Hyman, Esq.

        Attorney for Defendants

        ZACHARY CARTER
        Corporation Counsel of the City of New York
        100 Church Street
        New York, NY 10007
        By: Elizabeth C. DeGori, Esq.

**Sweet, D.J.**

Plaintiff M.G., on behalf of herself and her son, Y.G. (the "Student" and, collectively, the "Plaintiffs") have moved for a temporary restraining order and preliminary injunction against Defendants the New York City Department of Education ("NYC DOE"), New York City Board of Education ("NYC BOE"), and Chancellor of the New York City School District Carmen Farina (collectively, the "Defendants"). Plaintiffs seek injunctive relief for violations of the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 et seq. ("IDEA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the Due Process Clause of the Fourteenth Amendment of the United States Constitution (the "Due Process Clause"), 42 U.S.C. § 1983. For the reasons set forth below, Plaintiffs' motion is denied.

## Prior Proceedings

On October 5, 2017, Plaintiffs filed their Complaint against Defendants, alleging that Defendants, in a variety of situations, had denied Plaintiffs their rights as promised under the IDEA, Section 504, the Due Process Clause, the New York

1

State Constitution, and New York State Education law and regulations. (Dkt. No. 1.) On October 19, 2017, Plaintiffs filed their First Amended Complaint ("FAC"), which added three additional Plaintiffs. (See generally Dkt. No. 10.) As relevant to the instant motion, the FAC alleges that Student was denied a FAPE for the 2014 through 2017 school years, as well as been discriminated against in violation of Section 504, the ADA, and 42 U.S.C. § 1983. (See id. at 33.)

On November 13, 2017, Plaintiffs filed an order to show cause for a preliminary injunction, after which the Court issued a briefing schedule. (Dkt. No. 19.) On November 22, 2017, Plaintiffs filed an amended motion for a preliminary injunction, (the "Amended PI," Dkt. No. 22), which was heard and marked fully submitted on November 27, 2017.[1]

---

[1]     Following oral argument, the parties supplemented the record with correspondence made with the IHO. (See Dkt. Nos. 25-27.)

**Statutory Framework and Facts**

a. IDEA, Section 504, and the ADA

The IDEA establishes a comprehensive program for providing federal funds to assist the states in educating disabled children. In exchange for that federal assistance, the recipient state is required to ensure that disabled students receive a "free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. §§ 1400(d)(1)(A); 1412(a). A FAPE is a special education and related services that are "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S.Ct. 988, 999 (2017). The law requires that at least annually, the needs and services of a disabled child be described in an Individual Education Program ("IEP"). 20 U.S.C. § 1414(d); see also Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005). An IEP must provide an "appropriate education" but "not one that provides everything that might be thought desirable by loving parents." Bryant v. N.Y. Educ. Dep't, 692 F.3d 202, 215 (2d Cir. 2012)

(quoting Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 132 (2d Cir. 1998)) (internal quotation marks omitted).

Under the IDEA, "parents of students with disabling conditions are guaranteed both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008) (internal quotation marks and citation omitted). Accordingly, parents are afforded procedural safeguards to ensure that his or her child's IEP provides a FAPE. See 20 U.S.C. § 1415(f). In New York, after filing a Due Process Complaint ("DPC"), parents have the right to an impartial due process hearing before an Impartial Hearing Officer ("IHO"), who conducts an initial due process hearing and issues written findings. See N.Y. Educ. Law § 4404(1); see also J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir. 2004). Once a DPC is filed, a student is entitled to a "pendency" or to "stay put" in the then-current educational placement until the dispute is resolved. See 20 U.S.C. § 1415(j). Decisions by an IHO may be appealed to a New York State Review Officer ("SRO"), who examines the record and issues an "independent decision." See 20 U.S.C. § 1415(g); N.Y. Educ.

Law § 4404(2). Appeals from an SRO's decision may be brought a civil action in federal or state court. See 20 U.S.C. § 1415(i)(2)(A); N.Y Educ. Law § 4404(3).

Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Section 504 also requires the provision of a FAPE, and the implementation of an IEP in accordance with the IDEA is one way of satisfying Section 504's requirements. See 34 C.F.R. § 104.33. Given their similar requirements, Section 504 and the ADA are regularly considered in tandem. Rodriguez v. City of N.Y., 197 F.3d 611, 618 (2d Cir. 1999) ("Because Section 504 of the Rehabilitation Act and the ADA impose identical requirements, we consider these claims in tandem.").

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court . . . ." J.S., 386 F.3d at 112. "The purpose of the exhaustion rule is to channel disputes related to the education of disabled children into an

administrative process that could apply administrators'
expertise in the area and promptly resolve grievances." Cave,
514 F.3d at 245-46. Exhaustion of administrative remedies is a
requirement to provide a court subject matter jurisdiction over
IDEA claims. See F.C. v. N.Y.C. Dep't of Educ., No. 15 Civ. 6045
(PAE), 2016 WL 8716232, at *5 & n.4 (S.D.N.Y. Aug. 5, 2016)
(citing Coleman v. Newburgh Enlarged City Sch. Dist., 503 F.3d
198, 203 (2d Cir. 2007)) (collecting cases). "The exhaustion
requirement also applies where plaintiffs seek relief under
other federal statutes when relief is also available under the
IDEA." J.S., 386 F.3d at 112 (citing 20 U.S.C. § 1415(l))
(observing that Section 504 and Section 1983 claims "both seek
to ensure a free appropriate public education, thus subjecting
both to the IDEA exhaustion requirement"); see also Cave, 514
F.3d at 246 (citing 20 U.S.C. § 1415(l)) ("[C]omplainants must
overcome this significant procedural hurdle not only when they
wish to file a suit under the IDEA itself, but also whenever
they assert claims for relief available under the IDEA,
regardless of the statutory basis of their complaint").

    The exhaustion requirement is excused in limited
circumstances, such as "systemic violations that could not be
remedied by local or state administrative agencies 'because the

framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.'" Cave, 514 F.3d at 249 (quoting J.S., 386 F.3d at 114. Courts have also found that "lengthy delays in the administrative process may justify a finding that exhaustion would be futile or inadequate" although "specific threshold for such a finding is unclear." M.G., 15 F. Supp. 3d at 303 & nn. 40-41 (collecting cases).

## b. Student's IEP and Due Process Complaints[2]

Student is an eighteen year-old, twelfth grade student who currently attends New Explorations into Science, Technology, and Math ("NEST+m"), a public high school for gifted and talented students. (Declaration of Elizabeth C. DeGori dated November 16, 2017 ("DeGori Decl.") ¶ 8; Declaration of Elisa Hyman, Esq., dated November 10, 2017 ("Hyman Decl."), at YG-001171.) Student's psychoeducational evaluation indicates he possesses general cognitive ability in the superior range. (Hyman Decl., at YG-001165-1170.) Starting in March 2015 through the present,

---

[2] The following facts are drawn from the parties' briefing, submitted declarations, and attached exhibits with regard to the instant motion and are included only insofar as they provide helpful background or are necessary for the motion's resolution.

Student became diagnosed with an increasing number of disabilities and conditions, including Mononucleosis, Crohn's Disease, Irritable Bowel Syndrome, Convergence Insufficiency, Pediatric Sleep Apnea, and Chronic Fatigue Syndrome/Myalgic Encephalomyelitis. (See Hyman Decl., at YG-001070-89, YG-001165-70.) Student's IEP notes that his "medical illnesses cause extended absences which negatively impact his participation and progress" in the school curriculum. (Hyman Decl., at YG-001342.) During the 2017-2018 school year, as of November 13, 2017, Student has been absent 22 days and present 21 days; for the prior two academic years, Student was absent 165 days in 2015-2016 and 128 days in 2016-2017. (See Hyman Decl., at YG-001338; DeGori Decl. ¶ 19.) Student is presently missing eleven academic credits needed to graduate, though has completed the necessary Regents exams. (See DeGori Decl. ¶ 11.) Student presently has college counseling. (Id.)

Student's 2017-2018 IEP, dated August 25, 2017, includes provisions intended to respond to Student's health conditions (the "2017 IEP"). (See Hyman Decl., at YG-001337-53.) Student's IEP notes, inter alia, that Student is to receive extended time on classroom assignments, make up testing sessions that do not impact academic class time, make-up work during the Fall, a

8

second set of text books for home use, and use of a locker. (Hyman Decl., at YG-001342.) The IEP included accommodations for Student's testing, bathroom breaks, and snacks. (Hyman Decl., at YG-001347.) Under the IEP, Student was expected to participate in regular academic and physical education classes. (Hyman Decl., at YG-001349.)

The IEP required five hours per week of direct Special Education Teacher Support Services ("SETSS") and ten hours per week of indirect SETSS, both to be provided "Separate Location General Education/Other Location"; the IEP determined that home-instruction was not necessary, but that the separate location be with limited students to "reduce visual and auditory distraction."[3] (Hyman Decl., at YG-001345, YG-001347, YG-001351.) Under the IEP, the direct SETSS hours are to be focused on math.[4] (Hyman Decl., at YG-001345.) Home instruction is available, but requires either a parent remain home or that the parent provide

---

[3]    Indirect SETSS cover instances when Student's teachers "provide assignments, schedules, and notes, as appropriate, to be uploaded online for the Student's access." (DeGori Decl. ¶ 10.)

[4]    Defendants have stated that NYC DOE has agreed that SETSS hours may be used to support Student in any subject necessary and that any missed SETSS hours can be provided as make-up services. (See DeGori Decl. ¶¶ 17-18.)

a chaperone, in addition to prior medical approval from a
doctor. (See Hyman Decl., Ex. J.)

Several of Student's grades are presently marked as
Incomplete, mainly due to work incomplete during the semester;
incompletes are indicated as an "NX" on transcripts. (See DeGori
Decl. ¶ 20; e.g., Hyman Decl., at YG-000701.) NX grades do not
factor into the GPA, and students who receive an NX as a grade
must complete the remaining course requirements by the end of
the next semester to receive a final grade.[5] (See Hyman Decl.,
Ex. F.) Many of Student's grades previously marked as an NX are
now marked as a 55, including for Physical Education. (See Hyman
Decl., Ex. I.)

Plaintiffs have initiated administrative relief. Plaintiffs
attended two IEP meetings in August 2017; on August 31, 2017,
Plaintiffs filed a Due Process Request, and on October 3, 2017,
filed a Due Process Complaint, alleging claims similar to those
in Plaintiffs' FAC. (See FAC Exs. O & P; Declaration of Elisa
Hyman, Esq., dated November 16, 2017 ("Hyman Nov. 16 Decl."),
Ex. A-3-A-6; FAC, Ex. P.) The IHO held a pre-hearing conference

---

[5]     Plaintiffs note that the stated school policy regarding NX
grades does not indicate that failure to complete remaining
make-up work within that timeframe results in the NX grades
converting into grades of 55. (See Hyman Decl., Ex. F.)

on October 6 and October 12, 2017. (See Hyman Decl., Ex. H.) As a result of the pre-conference hearing, the IHO indicated that she would not consider Plaintiffs' federal claims for relief under Section 504 and the ADA. (See Hyman Decl., at YG-001132-33; see also id., at YG-000977.) On October 19, 2017, the IHO held a pendency hearing. (See Hyman Decl., Ex. H.)

On November 9, 2017, the IHO issued an Interim Order of Pendency, which found that the pendency program should be effective as of August 31, 2017 and the services should be as described in the 2017 IEP. (Hyman Nov. 16 Decl., Ex. A-6.)

**Applicable Standard**

Preliminary injunctions are "extraordinary and drastic remed[ies] that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). A party seeking a preliminary injunction must establish:

> [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest.

11

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20
(2008). When a mandatory injunction, which "alter[s] rather than
maintain[s] the status quo," is sought, "the movant must show a
'clear' or 'substantial' likelihood of success" on the merits.
*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d
286, 294 (2d Cir. 2012) (citation omitted). The standards for
granting a temporary restraining order and preliminary
injunction are the same. *Echo Design Grp., Inc. v. Zino Davidoff
S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003).

## Plaintiffs' Motion is Denied

Plaintiffs' Amended PI seeks to enjoin Defendants from
engaging in violations as outlined in the FAC, (see Amended PI
¶ (1)(a)-(e)), and directs Defendants to perform the following
actions, which have been summarized and regrouped by categories
below:

(1)     implement the IHO's pendency order and stay-put
        placement for five weekly hours of 1:1 teacher
        services at a rate of at least $150 per hour and
        similar compensatory teacher services at Student's
        home as required under the IEP's allocated SETSS hours
        from a private tutoring service, and with the five

12

hours of special education teacher services to be
funded prospectively, (see id. ¶ (2)(a)-(b), (i)-(j),
(k)(vii));

(2) expunge all failing grades, adjust grades from
Student's transcript that were reduced based on
attendance or lateness, allow Student make-up
assignments for certain exams and assignments,
including classes in which the NX policy was
implemented, recalculate certain grades using weighed
averages to include any made-up work, and prevent
attendance and lateness from factoring into Student's
grades or credits earned, (see id. ¶ 2(c)-(f), (k)(v),
(k)(viii));

(3) arrange for teacher and guidance counselor
recommendations necessary for Student's college
applications, with supervision of the Court and
Plaintiffs' counsel, and provide a cover letter to
colleges explaining the school's NX policy and NX
grades on Student's transcript, (see id. ¶ 2(g)-(h));

(4) provide Student a flexible school day to attend all
academic, non-academic, and extracurricular classes
without penalty, (see id. ¶ 2(k)(i));

13

(5) provide Student partial day home-based instruction
when Student is not well enough to attend school
without requiring parents to provide or fund a
chaperone, (see id. ¶ 2(k)(ii));

(6) provide Student adaptive Physical Education classes
and independent study credit for available classes,
(see id. ¶ 2(k)(iv)); and,

(7) require daily communication between NEST+m school
staff and Student's home-based teachers concerning
missing work and assignments, (see id. ¶ 2(k)(vi)).

Defendants contest Plaintiffs' motion largely on the
grounds that the relief sought is available through the ongoing
proceeding before the IHO and, as such, such claims have not
been exhausted. For any remaining claims, Defendants contend
that Plaintiffs have not demonstrated irreparable harm from the
absence of a preliminary injunction.

Turning first to Plaintiffs' requests addressing the
implementation of stay-put provisions under the IHO's pendency
order, these requests are not properly before the Court at this
time. Jurisdictionally speaking, were Defendants not
implementing 2017 IEP, which the IHO determined controlled the

14

stay-put provisions of Student's pendency, the exhaustion requirements would be waived. See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199-200 (2d Cir. 2002) (citations omitted) (noting that for matters involving stay-put provisions, "as a practical matter, access to immediate interim relief is essential for the vindication of this particular IDEA right"). Plaintiffs argue that this is the case here because the IEP is not being implemented: specifically, the Student should receive the five hours of SETSS stated on his 2017 IEP at home, not at school, given his illnesses, and that there is no time in Student's regular school schedule to include the SETSS hours; Plaintiffs also argue that Defendants have failed to provide a second set of textbooks. (See Pls.' Reply Mem. at 5-7.)

With the evidence adduced, however, Plaintiffs have not demonstrated that Defendants are not implementing the IHO's pendency order and that this Court's review is appropriate. The IEP does not require that SETSS to be provided at home—in fact, it was deemed "unnecessary" and recommends against it. (Hyman Decl., at YG-001351.) There is no requirement that the hours being provided after-school.[6] (Hyman Decl., at YG-000655, YG-

---

[6]    Defendants have agreed to provide Student's SETSS after-school, although the chaperone requirement for home instruction still remains. (See Defs.' Sur-Reply at 10.)

15

001345.) As such, it is not improper for Defendants to interpret the requirement that the SETSS hours be provided at a "Separate Location General Education/Other Location as needed" to be in school and during non-academic periods, which has been agreed to by the NYC DOE. (See Defs.' Sur-Reply at 7.) As for the missing second set of textbooks, Defendants represented during oral argument that since the instant motion, those were being provided to Student, and no evidence has been presented to indicate this is not the case.

The remainder of Student's requests that touch upon parts of the IEP—such as Student-specific funding for compensatory teacher service hours, adding adaptive Physical Education classes, or requiring cover letters be written for Student's college applications—such requests are beyond the parameters as laid out in the 2017 IEP.[7] New York's "regulations . . . plainly (and mandatorily) provide that a child's pendency placement shall not change during those due process proceedings." N.Y.C. Dep't of Educ. v. S.S., No. 09 Civ. 810 (CM), 2010 WL 983719, at

---

[7] With regard to the Physical Education issue, Defendants have represented that NEST+m has agreed to offer an alternate option to Student's currently scheduled Physical Education class that alternates between morning and afternoon. (See Defs.' Sur-Reply at 4, 14.)

*1 (S.D.N.Y. Mar. 17, 2010) (emphasis in original).[8] While Student's predicament is unquestionably sympathetic, the relief sought in this capacity cannot be provided by this Court at this time.

The same restrictions on this Court's jurisdictional power extend to the remainder of Plaintiffs' requests, as each falls within the purview of the IHO's ongoing due process proceeding. First, although Plaintiffs attempt to separate out claims made under IDEA, Section 504, or the ADA, each of the claims is intended to provide Student a FAPE; as such, it is not relevant under which statute the IHO considers the requested relief, as the ultimate relief could be the same. See J.S., 386 F.3d at 112 ("At the district court correctly noted, the students asserted a section 504 Rehabilitation Act claim and a section 1983 claim

---

[8]     Plaintiffs cite F.C. v. N.Y.C Dep't of Educ., No. 15 Civ. 6045 (PAE), 2016 WL 8716232 (S.D.N.Y. Aug. 5, 2016), to support their claim that this Court can hear these compensatory services requests. (See Pls.' Reply at 8.) On a motion to dismiss, the F.C. court found that a plaintiff sufficient pleaded a claim that alleged a student had been deprived of compensatory services previously granted by an IHO because of defendants' policy and practices. See id., 2016 WL 8716232, at *2, *8. In fact, F.C. appears to support finding a lack of jurisdiction here: that for claims made prior to an IHO's decision, the court found that it lacked jurisdiction to "fashion the very types of relief [Plaintiff] seeks: 'compensatory education and equitable relief to [Plaintiff] that places him in the position that he would have been in had he not suffered FAPE deprivations.'" Id., 2016 WL 8716232, at *7. Such is the case here.

that both seek to ensure a free appropriate public education, thus subjecting both to the IDEA exhaustion requirement."). The fact that the IHO has declined to hear claims under Section 504 or the ADA does not change the IHO's ability to afford the same sought relief under the IDEA.[9] See Coleman, 503 F.3d at 205 (quoting Murphy, 297 F.3d at 199) ("For relief to be adequate, it must 'give realistic protection to the claimed right.'"). Plaintiffs' requests, in their entirety, both can and should be considered by the IHO during her upcoming due process hearing.

The Supreme Court's recent decision in Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743 (2017), supports this conclusion. In Fry, the Court provided guidance to district courts in evaluating whether a plaintiff's claim is subject to IDEA's exhaustion requirements or is free of the requirement because the complaint seeks relief from harms "in ways unrelated to a FAPE." Id. at 754. According to the Court, this evaluation requires looking to the complaint's "substance, not surface":

---

[9]     The Second Circuit has observed the wide range of relief that state and local officials can provide, including equitable relief such as modifying "academic honors" and "reimbursement of educational expenses." Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 486 (2d Cir. 2002) (citations omitted). As such, it is well within the capacity of the IHO to afford Plaintiffs the relief sought here, if ultimately found appropriate.

18

for example, asking if "the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination." Id. at 755-56. Courts can also look to the "history of the proceedings" to determine the "gravamen of the suit." Id. at 757. In Fry, the plaintiff brought a discrimination claim against her school for refusing to allow her to bring in a service dog, which the Court found potentially to be outside the IDEA's focus on the denial of a FAPE, explaining that plaintiff "could have filed essentially the same complaint if a public library or theater had refused admittance to [the service dog]." Id. at 758.

The factors discussed in Fry indicate that Plaintiffs' requests are not excluded from the IDEA's exhaustion requirements. The "gravamen" of the reliefs sought—modifying where and when teacher hours are provided, adjusting grades and class schedules, or providing additional instruction and communication between the school, the Student's parents, and college counselors—are all related to providing a FAPE and are not the sorts of requests that could be made outside of discussing the "adequacy of [Student's] education." Id. at 758. Moreover, nothing in the procedural history of this matter, which has been the normal process of IEP meetings, due process

19

complaints, and various hearings before an IHO, suggests the scope of Plaintiffs' requests go beyond ensuring that Student is provided a FAPE. See id. at 757 ("A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy."). As such, the invocation of federal statutes and federal relief does not remove Plaintiffs' claims from the New York administrative process.

Plaintiffs make some additional arguments as to futility in an attempt to surmount the exhaustion requirement: that they are alleging claims of systematic harm, that exhaustion should be excused because of untimely delay of the administration process, and that exhaustion should be excused because the IHO could not provide adequate remedies or prevent irreparable harm. None are availing.

Plaintiffs argue that their claims involving home-instruction amount to systemic, citywide policies and practice of discrimination because not providing part-time home instruction without incurring prohibitory financial cost to

20

families like Plaintiffs', it infringes on students' access to a FAPE and discriminatorily forces students like Student to miss academic and non-academic services that their non-disabled peers do not. (See Pls.' Reply at 15-17.)

In cases involving "systemic violations that could not be remedied by local or state administrative agencies," the Second Circuit has found exhaustion excused "'because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.'" Cave, 514 F.3d at 249 (quoting J.S., 386 F.3d at 114). Claims of systemic violations can be made at the individual level, provided "a systemic policy is at stake" and "the administrative officer has no power to correct the violation." F.C., 2016 WL 8716232, at *8 (internal quotation marks, citation, and alternation omitted).

Such a case has not been established here. Plaintiffs have identified legitimate challenges that Student faces in balancing either acquiring home-instruction, which is admittedly made more difficult by NYSDOE's supervision and doctor certification policies, or in crafting a schedule for Student to receive the

same specialized instruction while at school. However, this is, at its root, a dispute about how and should Student receive instruction—whether at home or at school, and which has been addressed already in the 2017 IEP—and how to structure Student's school day to afford SETSS hours in the context of his various physical disabilities. Resolving this issue, while complicated, has not been demonstrated to be outside the parameters of the currently existing administrative review structure. While the outcome may not be exactly what Plaintiffs desire, it has not been shown that the possible outcome after the IHO's careful consideration would not be a legally sufficient and appropriate FAPE.[10] See L.K. v. N.Y.C. Dep't of Educ., 674 F. App'x 100, 101 (2d Cir. 2017) (citations and internal alternations omitted) (noting that the IDEA "does not require that a child be provided with the optimal programmatic alternative" or "the best education that money can buy" but rather "calls only for selection of a program that provides a basic floor of opportunity," which must be balanced when deciding what additional services the state needs to pay for). Plaintiffs' concerns are valid and deserving of attention, but they are not the kinds of issues that the administrative process has "no power to correct" and which are not subject to administrative

_____

[10]     In particular, the record with respect to Defendants' policies of supervision and doctor certification is not mature.

22

exhaustion. J.S., 386 F.3d at 113; see also Polera v. Bd. of
Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 486
(2d Cir. 2002) (noting that state of local administrative
agencies have a wide authority "to find that an IEP is
deficient, has not been complied with, or that similar wrongs
have been committed" and remedy them); F.C., 2016 WL 8716232, at
*9 (citing S.W. by J.W. v. Warren, 528 F. Supp. 2d 282, 296
(S.D.N.Y. 2007)) ("These allegations therefore do not support
the claim of a systemic violations, but instead rather reflects
a plaintiff-specific 'dispute over the quality or methodology of
service, which is routinely and properly resolved through the
administrative process.'"); Mrs. M v. Bridgeport Bd. of Educ.,
96 F. Supp. 2d 124, 133 (D. Conn. 2000) (construing claims as
nonsystematic by finding the "challenge really is to the
substantive determinations reached by the [defendant school
district] concerning certain children, not to the structure of
the system under which the identification was made").

Plaintiffs next argue that their claims should be excused
because the IHO has failed to hold a resolution session and
issue a decision within the required statutory time period.
(Pls.' Reply at 1-2.) Specifically, Plaintiffs note that from
the date of filing their DPC to the time of this motion's oral

23

argument, three months have elapsed without a hearing, and a decision should have statutorily been rendered about a month ago. (Pls.' Reply at 2); see 34 C.F.R. §§ 300.510, 300.515. Plaintiffs also note, after reviewing cases in Second Circuit, those decisions suggest that state due process hearing decisions have taken many years to be resolved. (See Pls.' Reply at 2-3.)

Courts in the Second Circuit have recognized that, "in certain circumstances, 'lengthy delays in the administrative process may justify a finding that exhaustion would be futile or inadequate.'" M.G., 15 F. Supp. 3d at 303 (citing Frutiger v. Hamilton Cent. Sch. Dist., 928 F.2d 68, 74 (2d Cir. 1991)). If a plaintiff "has shown that, due to administrative backlog or otherwise, an IHO or SRO has failed to timely issue a decision on a fully briefed due process complaint or appeal, a district court can assume jurisdiction." F.C., 2016 WL 8716232, at *7 (citation omitted).[11] "Although the specific threshold for such a finding is unclear," courts have found exhaustion after a delay in cases ranging from two months to two years. M.G., 15 F. Supp. 3d at 303 & n.44 (collecting cases).

---

[11] IHOs have thirty days to hold a resolution session, unless the period is extended, and following the session have forty-five days to issue a final decision; SROs have thirty days following a fully briefed appeal to issue a final decision. See 34 C.F.R. §§ 300.510, 300.515.

24

Plaintiffs' situation, while frustrating, has not been demonstrated to merit excuse from exhaustion. First, at this time, the resolution period has been extended by the IHO on request by Defendants, and appears based in part on the IHO's decision to hold off pending the outcome of Plaintiffs' instant preliminary injunction petition. (See Letter of Elisa Hyman dated November 30, 2017, Ex. A, Dkt. No. 25.) While there has been a delay of over two months in holding the resolution session from the date of Plaintiffs' initial DPC, there has been an extension made and granted for arguably appropriate reasons; as such, to "take some form of equitable action prior to the revised deadline . . . might only prolong the resolution of this case, which is long overdue, by interfering with the administrative scheme provided for by the IDEA." Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., No. 99 Civ. 9294 (CSH), 1999 WL 1140872, at *4 (S.D.N.Y. Dec. 13, 1999) (refraining from granting requested equitable remedies even when the SRO, *sua sponte*, granted an extension of time two months after final decision was due and without "any basis or cause"). While Plaintiffs have put forward a collection of Second Circuit cases that demonstrate that the entire administrative process, from an initial DPC to an SRO's final decision, can take years, (see

Pls.' Reply at 2-3), evidence has not established that there is
an "administrative backlog or otherwise" as to Plaintiffs' IHO
that will prevent a timely issuance of a decision following this
Opinion.[12] F.C., 2016 WL 8716232, at *7.


Lastly, as to Plaintiffs' inadequate remedies and
irreparable harm arguments, they are unavailing for similar
reasons discussed above. "IDEA's exhaustion requirement does not
apply 'in situations in which exhaustion would be futile because
administrative procedures do not provide adequate remedies.'"
Polera, 288 F.3d at 488 (quoting Heldman v. Sobol, 962 F.2d 148,
158 (2d Cir. 1992)). As detailed above, the relief sought,
receiving a FAPE for Student, whether through adjusted Physical
Education and SETSS classes or grade adjustments and make-up
classes to receive a diploma, is within the IHO's powers under
the IDEA and needs to be first adjudicated through the
legislatively-designed administrative process.[13] See id. at 486.

---

[12]    The facts underlying Sabatini v. Corning-Painted Post Area
Sch. Dist., 78 F. Supp. 2d 138 (W.D.N.Y. 1999), to which
Plaintiffs cite, are different than present here. The court
there addressed an untimely SRO decision, which as noted above
as a shorter timeframe for rendering a final decision, on appeal
by defendants, and the record had "no indication of the reason
for the delay," request for extensions, or apparent good reason
for the delay. Id. at 141.

[13]    Plaintiffs argue that M.W. v. N.Y.C. Dep't of Educ., No. 15
Civ. 5029 (WHP), 2015 WL 5025368, at *1 (S.D.N.Y. Aug. 25,

While not the fastest process, it has not been established that the "administrative process is so structurally tainted" that Plaintiffs have not been "afforded a fair and impartial forum to present their claims." Cave, 514 F.3d at 250; see also Coleman, 503 F.3d at 206 (rejecting futility and "emergency situation" arguments in the context of an expelled student because, under the IDEA, "the carrying out of these administrative processes may take some time, and in certain circumstances result in the child graduating in an IAES after his anticipated graduation date, does not equate to an inadequate remedy."); Polera, 288 F.3d at 490 (holding that exhaustion of administrative remedies was not futile where the plaintiff "could have obtained complete relief at the time, through changes to her IEPs, additional educational services, and, if necessary, remedial education").

---

2015), supports their claim that Student's risk of losing the ability to earn a high school diploma amounts to irreparable harm. While accurate that Judge Pauley's decision supports the contention that the inability to earn a diploma would go against the "fundamental purpose of the IDEA" and be irreparable harm, the case is otherwise inapposite. Id., 2015 WL 5025368, at *5. There, a twenty-one year old who had already aged out of New York public education appealed from an SRO's final decision, and the court found, with the backdrop of defendants' admission that they denied plaintiff a FAPE for two years, that the plaintiff should continue to be eligible for special education services and a diploma while receiving instruction and the opportunity to sit for necessary Regents exams. See id., 2015 WL 5025368, at *1-2, *8. Student's situation, years away from aging out and in the early stages of receiving administrative relief, is meaningfully distinguishable.

Student's situation is undesirable and, to date, frustrating. However, Plaintiffs' claims are "not properly brought before" this Court and the relief they seek is not for it to give. Cave, 514 F.3d at 250. Given the procedural posture of this case, such requests need to be addressed first by the administrative system, whose adjudicators are "uniquely well-suited" to delve into the details required to resolve Student's issues. Polera, 288 F.3d at 487 (citation omitted). Following this Opinion, Plaintiffs' requests need to be addressed by the IHO expeditiously, thoroughly, and encompassing each of the requested reliefs sought by Plaintiffs. The IHO's declination of jurisdiction over federal claims should in no way prevent her from considering the whole range of requested relief, as such falls within her powers under the IDEA, and assisting Student in receiving a FAPE, to which he is entitled under the same.

**Conclusion**

For the foregoing reasons, Plaintiffs' motion is denied, with leave to renew upon a proper showing of an unjustifiably delay or to challenge any administrative determinations as to Student following administrative exhaustion.

It is so ordered.

**New York, NY**
**December ⟨ , 2017**

ROBERT W. SWEET
**U.S.D.J.**

29